UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM J. POZZOULI,

               Plaintiff,

    v.                              **DECISION AND ORDER**
                                      **07-CV-0414 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

# Introduction

1.     Plaintiff William J. Pozzouli challenges an Administrative Law Judge's ("ALJ") determination that he is not entitled to supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since April 27, 1995, because of severe musculoskeletal, respiratory, and stress-related mental impairments. Plaintiff has met the disability insured status requirements of the Act at all times on or before the date of the ALJ's decision.

# Procedural History

2.     Plaintiff filed an application for SSI and DIB on June 6, 2000, alleging an onset of disability of April 27, 1995. His application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Plaintiff filed a timely request for a hearing before an ALJ, and on September 14, 2001, Plaintiff appeared *pro se*,

and testified before ALJ J. Lawson Brown.  The ALJ considered the case *de novo* and on December 21, 2001, issued a decision finding that Plaintiff was not disabled.  Plaintiff requested the Appeals Council review the ALJ's decision on February 15, 2002.  On April 25, 2002, the Appeals Council denied Plaintiff's request for review.

Plaintiff filed a subsequent application for SSI benefits on April 18, 2003.  On January 12, 2004, ALJ Robert Wright issued a fully favorable decision on that application, and found Plaintiff disabled as April 18, 2003.  In a letter dated March 16, 2004, Plaintiff's attorney appealed that portion of ALJ's Wright's decision declining to re-open Plaintiff's prior application for SSI and DIB dated June 6, 2000, and requested that the Appeals Council re-open, or reconsider, ALJ Brown's decision of December 21, 2001.

On March 2, 2007, the Appeals Council notified Plaintiff it had set aside its earlier decision of April 25, 2002, denying Plaintiff's request for review of the hearing decision dated December 21, 2001, in order to consider additional information submitted by Plaintiff.  The Appeals Council advised Plaintiff it had reviewed the additional information, but found no reason under the rules governing Appeals Council actions to review ALJ Brown's decision of December 21, 2001.  Further, the Appeals Council notified Plaintiff in its letter of March 2, 2007, that it found no reason to review or disturb the fully favorable decision of January 12, 2004.

3.      On April 17, 2007, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the

ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant SSI or DIB benefits to Plaintiff.[1]  The Defendant filed an answer to Plaintiff's complaint on October 4, 2007, requesting the Court to dismiss Plaintiff's complaint.  Plaintiff submitted Plaintiff's Brief requesting that the Commissioner reverse and remand the ALJ's decision on January 17, 2008.  On March 17, 2008, Defendant filed a Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.

## Discussion

### Legal Standard and Scope of Review:

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant

---

[1] The ALJ's December 21, 2001, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen

v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119

(1987), and it remains the proper approach for analyzing whether a claimant

is disabled.

      7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently
> engaged substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work active-
> ties.  If the claimant has such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant has
> such an impairment, the [Commissioner] will consider him disabled with-
> out considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial gain-
> ful activity.  Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past work.  Finally,
> if the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also

Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

      8.     While the claimant has the burden of proof as to the first four steps,

the Commissioner has the burden of proof on the fifth and final step.  See

Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).

The final step of this inquiry is, in turn, divided into two parts.  First, the

Commissioner must assess the claimant's job qualifications by considering

his physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42

U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); <u>Heckler v. Campbell</u>, 461

U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

     9.     In this case, the ALJ made the following findings with regard to

factual information as well as the five-step process set forth above: (1)

Plaintiff last met the disability insured status requirements of the Act on

December 31,1999 and has not engaged in substantial gainful activity since

his alleged onset of disability on April 27, 1995 (R. at 24);[3]  (2) Since April 27,

1995, Plaintiff has suffered from severe musculoskeletal impairments which

fail to meet or equal the level of severity of any disabling condition contained

in Appendix 1, Subpart P of the Social Security Regulations No. 4 (R. at 24);

(3) Since April 27, 1995, Plaintiff has been unable to perform his past relevant

work as a welder and machinist, since Plaintiff is no longer capable of

meeting the very heavy exertional demands required by those occupations

(R. at 24); (4) Since April 27, 1995, Plaintiff has been limited to medium work

activity, with restrictions on very heavy lifting.  Support for this conclusion can

be found in Exhibits 1F through 14F (R. at 24); (5) Plaintiff, who is 44 years

old, has a 12th grade education and semi-skilled past relevant work

experience (R. at 24); and (6) Given the Plaintiff's residual functional capacity

and vocational background, Rule 203.29 of Appendix 2, Subpart P of Social

Security Regulations No. 4 requires a finding of not disabled (R. at 24).

Ultimately, the ALJ determined Plaintiff was not entitled supplemental security

income benefits, or to a period of disability and disability insurance benefits,

as set forth in sections 216(i) and 223(d) of the Social Security Act (R. at 24).

---

[3] Citations to the underlying administrative are designated as "R."

**Plaintiff's Allegations:**

10.    Plaintiff alleges three challenges to the Commissioner's decision that Plaintiff was not disabled during the relevant time frame for his June 6, 2000, claim. See Plaintiff's Brief, pp. 1.   The primary theme of Plaintiff's challenges is that the unfavorable decision of ALJ Brown published on December 21, 2001, is not based on the substantial evidence of record because the evidence considered by ALJ Wright in his fully favorable decision of June 12, 2004, was not used as a basis by either ALJ Wright or by the Appeals Council to re-open Plaintiff's earlier SSI and DIB claim[4].  Thus, Plaintiff argues in his brief that all available evidence was not used by ALJ Wright and the Appeals Council to establish that Plaintiff actually had an earlier onset of disability than was recognized in ALJ Wright's decision.  See Plaintiff's Brief, pp. 3-7.  Plaintiff claims (1) new and material evidence was submitted to the Appeals Council and to ALJ Wright, who wrote the fully favorable January 12, 2004 decision, and this new and material evidence warranted re-opening of the unfavorable December 21, 2000 decision of ALJ Brown, (2) ALJ Wright and the Appeals Council were required to determine the onset date of Plaintiff's physical and mental impairments, and (3) the Appeals Council failed to consolidate Plaintiff's records, and to consider the totality of the evidence in his records, from his June 6, 2000 application for SSI and DIB, and his April 18, 2003 application for SSI, when denying his

---

[4] Plaintiff does not argue in his brief that the December 21, 2001 decision of ALJ Brown was not based on the substantial evidence of record at the time the decision was rendered.  See Plaintiff's Brief, pp. 1-7.

request to re-open the earlier of the two claims.  Each of Plaintiff's challenges

will be discussed in sequence below.

> **Plaintiff's First Challenge:  New and Material Evidence Was
> Submitted to the Appeals Council, and to the ALJ Who
> Decided Plaintiff's Later Claim, and This Warranted Re-
> opening of Plaintiff's June 6, 2000 Claim**

11.    Plaintiff alleges both the Appeals Council and ALJ Wright erred by

failing to consider new and material evidence submitted by Plaintiff with a

request to re-open his June 6, 2000 claim that was unfavorably decided by

ALJ Brown, and by failing to vacate ALJ Brown's decision and remand the

matter for further administrative proceedings.  See Plaintiff's Brief, pp. 1, 3-6.

Plaintiff avers the evidence submitted in connection with his April 18, 2003

application for benefits was new and material to Commissioner's December

21, 2001 unfavorable decision on the earlier application.  Plaintiff's broad

challenge against both the ALJ and the Appeals Council requires the Court to

consider Plaintiff's claims in light of the Commissioner's rules governing the

Appeals Council with respect to new and relevant evidence and the re-

opening of cases, and the rules that pertain to the ALJ with respect to the

same.

Given the Commissioner's rules, neither the favorable decision of

ALJ Wright on January 12, 2004, nor the decision of the Appeals Council not

to re-open the earlier claim for benefits, is subject to judicial review.  Plaintiff's

civil action before the Court may challenge only the determination of the ALJ

that Plaintiff was not under a disability during the relevant time frame, and not

the failure of the Appeals Council to remand the case for further

administrative proceedings based on Plaintiff's submission of what he believes to be new and relevant evidence.  See 42 U.S.C. § 405(g); see also Califano v. Sanders, 430 U.S. 99, 108 (1977).  Except in two very specific instances, Plaintiff's civil action must necessarily be directed at the decision of the ALJ, and not the failure of the Appeals Council to remand for further administrative proceedings.  Id.  The two instances in which a federal court may review the Commissioner's decision not to re-open an SSI or DIB application occur when the Commissioner has constructively re-opened an application, or when there is a constitutional claim.  See Bynum v. Barnhart, 336 F.3d 172, 180-181 (2d Cir. 2003).

In this matter, the January 12, 2004 decision of ALJ Wright, which arose out of Plaintiff's April 18, 2003 application for SSI benefits, was fully favorable to Plaintiff.  Further, it is clear from ALJ Wright's decision that he did not re-open the record pertaining to the December 21, 2001 decision of ALJ Brown.  See Plaintiff's Brief, Exhibit A (Decision of ALJ Wright).   In his decision, ALJ Wright stated, "…the claimant's current application for supplemental security income was filed in April 2003, five years after his initial denial in January 1998.  Therefore his prior application is unable to be re-opened, as it exceeds the two to four year re-opening ruling.  In addition, I find that new and material evidence does not exist to warrant re-opening of the claimant's prior applications."[5]  Id.  Plaintiff seems to advocate in his brief

_____

[5] The two and four-year re-opening rules referenced by ALJ Wright are found in HALLEX, the Hearing, Appeals, and Litigation Manual published on-line by the Social Security Administration's Office of Disability Adjudication and Review.  "An Administrative Law Judge (ALJ) has the

that since ALJ Wright found Plaintiff disabled based on treating source reports ~~that~~ suggesting the onset of Plaintiff's mental and physical impairments may have occurred on or before the relevant time frame for his June 6, 2000 claim, ALJ Wright had constructively re-opened Plaintiff's earlier claim.  See Plaintiff's Brief, pp. 3-6.  Thus, Plaintiff's argues the ALJ had an obligation to consider this evidence along with the evidence from Plaintiff's earlier claim in order to establish an actual onset of disability date.  Id.  However, absent any indication that ALJ Wright reviewed Plaintiff's earlier claim, together with the record of that claim, the Court cannot conclude that that he constructively re-opened Plaintiff's June 6, 2000 application for SSI and DIB.  See Byam v. Barnhart, 336 F.3d 172, 180-181 (2d Cir. 2003).  ("If the Commissioner 'reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived' and thus, 'the claim is ... subject to judicial review.'") Malave v. Sullivan, 777 F.Supp. 247, 251-52 (S.D.N.Y.1991) (citing Coup v. Heckler, 834 F.2d 313, 317 (3d Cir.1987) and McGowen v. Harris, 666 F.2d 60, 65-67 (4th Cir.1981)); see also Kasey v. Sullivan, 3 F.3d 75, 77-78 (4th Cir.1993); Brown v. Sullivan, 932 F.2d 1243, 1246-47 (8th Cir.1991); Cherry v. Heckler, 760 F.2d 1186, 1189 (11th

---

authority to reopen a determination or hearing decision, which is otherwise final and binding, for good cause as follows:

- after the 12-month period for reopening for any reason but within 4 years from the date of the notice of the initial determination in a claim under Title II; or
- after 12 months but within 2 years from the date of the notice of the initial determination in a claim under Title XVI.
  See http://ssa.gov/OP_Home/hallex/I-02/I-2-9-40.html.

Cir.1985); <u>Taylor for Peck v. Heckler</u>, 738 F.2d 1112, 1115 (10th Cir.1984)."

Moreover, Plaintiff raises no due process or other constitutional claim.  Thus,

the Court finds with respect to ALJ Wright's fully favorable decision on

Plaintiff's later claim, the ALJ was neither required by the Commissioner's

rules to re-open the earlier claim, nor did he constructively re-open the earlier

claim.

Further, Plaintiff claims that the Appeals Council failed to properly

consider new and material evidence that would have supported his request to

re-open his June 6, 2000 application.  <u>See</u> Plaintiff's Brief, p. 3-6.  Plaintiff

claims this new and material evidence is all of the evidence contained in the

record from his April 18, 2003 claim.  <u>Id</u>.

As a matter of history, the Appeals Council denied Plaintiff's

request for review of ALJ Brown's unfavorable decision on April 25, 2002,

after Plaintiff submitted treatment records to the Appeals Council from a new

physician on February 15, 2002 (R. at 12-13, 15, 246-253).  However, on

June 20, 2003, the Appeals Council sent Plaintiff a letter advising him that he

could send new and material evidence, or a statement about the facts and

law in the case, within 30 days of the date of the letter (R. at 10-11).

Plaintiff's attorney sent a letter to the Appeals Council on January 20, 2004,

advising the Appeals Council he had just become aware of the June 20, 2003

letter, and requested an extension of time to forward new and material

evidence pertaining to the December 21, 2001 unfavorable decision (R. at

259).  Plaintiff's attorney attached a copy of ALJ Wright's favorable decision

to the letter, but submitted no additional evidence at that time.  On March 16, 2004, Plaintiff's attorney sent another letter to the Appeals Council wherein he requested "…that the Appeals Council either re-open the December 21, 2001 decision or reconsider it based on appeal as a result of the decision dated January 12, 2004.  I believe that the new and favorable evidence contained in the Fully Favorable decision relates back, and that [Plaintiff's] condition predates the 2001 decision." (R. at 261).  However, Plaintiff's attorney submitted no additional evidence either with his letter or within a reasonable time afterward.  Thus, the only evidence submitted to the Appeals Council by Plaintiff that pertained to his June 6, 2000 claim for benefits was the underlying administrative record for the claim, a physician's treatment notes previously reviewed by the Appeals Council, and a copy of ALJ Wright's fully favorable decision based on Plaintiff's April 18, 2003 claim.

When the Appeals Council receives new evidence with a request to review an ALJ's decision, it will consider all the evidence in the ALJ's hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the ALJ's decision in the matter.  See 20 C.F.R. § 404.976(b). Guidance given to the Appeals Council for handling evidence submitted after an ALJ's decision is issued in HALLEX, the Hearing, Appeals, and Litigation Manual published on-line by the Social Security Administration's Office of Disability Adjudication and Review.  See http://www.ssa.gov/OP_Home/hallex.html.  In general, "When a claimant or representative submits additional evidence, it must be both new and material

to warrant the Appeals Council's consideration.  Evidence is new when it is

not duplicative, cumulative or repetitive, and it is material when it affects the

ALJ's findings or conclusions <u>and</u> relates to the time [period on or before the

date of the ALJ's decision]…When new and material evidence has been

submitted with a request for review, the analyst will apply the weight of the

evidence rule instead of the substantial evidence rule in deciding whether to

recommend review action to the Appeals Council."  <u>See</u>

http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-6.html.  In its fiscal year 2005

Performance and Accountability Report, the Social Security Administration

explained its view of the difference between substantial evidence and weight

of evidence by stating, "Substantial evidence is defined as evidence, which,

although less than a preponderance, nevertheless is sufficient to convince a

reasonable mind of the credibility of a position taken on an issue, when no

evidence on the opposing side clearly compels another finding or conclusion.

The 'substantial evidence rule' requires less in support of a finding or

conclusion than the 'weight of evidence rule.'  Evidence on one side of an

issue need not possess greater weight or be more convincing and credible to

be 'substantial.'"  <u>See</u> SSA's FY 2005 Performance and Accountability

Report, p. 76.

     When new evidence is submitted to the Appeals Council with a

request to review an ALJ's decision, an Appeals Council analyst must

determine if the evidence is: (a) both new and material, (b) new, but not

material, or (c) neither new nor material.  The analyst must also consider

whether or not the evidence concerns both the issues and the time period considered by the ALJ.  See http://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html.

While the Court has examined ALJ Wright's decision and recognizes he considered similar issues to those considered by ALJ Brown, ALJ Wright's decision it is not material to the earlier decision because it does not pertain to the time frame relevant to Plaintiff's claim.  ALJ Wright's decision is based on an application for SSI benefits dated April 18, 2003, and the evidence cited in that decision postdates the unfavorable decision of ALJ Brown on December 21, 2001.  As an example, Plaintiff refers to a report of consultative examiner Dr. Michelle Antiles, wherein the doctor recorded Plaintiff's history of an industrial accident in 1995, and an automobile accident in 1993, and the symptomatology he claimed as a result of these events.  See Plaintiff's Brief, p. 4, Exhibit B.  Because ALJ Wright gave great weight to the report of Dr. Antiles, Plaintiff claims the report establishes Plaintiff had severe impairments on or before the date of ALJ Brown's unfavorable decision.  Id.  As a second example, Plaintiff refers to a psychiatric report cited by ALJ Wright in his decision.  See Plaintiff's Brief, pp. 4-6.  Plaintiff claims this report provides documentation that Plaintiff suffered from a disabling psychiatric condition on or before the date of ALJ's Brown's decision.  Id.  However, in a psychological consultative report completed by Matthew Merrens, Ph.D. on December 7, 2000, Dr. Merrens noted there were no distinct Axis I syndromes, and no distinct Axis II personality disorders, although Plaintiff

exhibited features of obsessive-compulsive disorder and paranoid personality disorder in mild to moderate form (R. at 226, 227).

While the Appeals Council reviewed Plaintiff's new evidence submitted on March 16, 2004, it did not find this evidence material to Plaintiff's claim for SSI and DIB dated June 6, 2000, and found no reason to review ALJ Brown's decision of December 21, 2001, or to re-open the case (R. at 3-4, 261).  Further, upon review of Plaintiff's administrative record for his claim of June 6, 2000, and the subsequent decision of December 21, 2001, by ALJ Brown, and ALJ Wright's decision of January 12, 2004, the Court finds ALJ Wright did not explicitly, or constructively, re-open Plaintiff's June 6, 2000 application.

Further, the Court finds that neither the fully favorable decision of ALJ Wright dated January 12, 2004, nor the Appeals Council declination to re-open Plaintiff's June 6, 2000 claim for SSI and DIB, is subject to judicial review.

### Plaintiff's Second Challenge: ALJ Wright and the Appeals Council Were Required to Determine the Onset Date of Plaintiff's Mental and Physical Impairments

12.    Plaintiff's second challenge to ALJ Brown's unfavorable decision is that ALJ Wright, and the Appeals Council, erred by not establishing an onset date for the mental and physical disabilities that made Plaintiff eligible for benefits.  See Plaintiff's Brief, pp. 1, 6-7.   Plaintiff claims that failure to establish this date may have denied him DIB benefits that would have flowed

from his June 6, 2000 application for SSI and DIB, had he been found to be disabled as a result of that application.  Id.

Plaintiff's fully favorable application for SSI benefits was filed on April 18, 2003, and ALJ Wright found him to be disabled as of that date. Thus, according to 20 C.F.R. § 416.335, Plaintiff was eligible for benefits beginning May 1, 2003.  The rule for payment of SSI benefits as established in the regulations is clear; payment of benefits can begin no earlier than the first month following the month the application is filed.  Id.  Even if a claimant met all the requirements for SSI benefits earlier than the month in which the application was filed and could have been disabled under the Act, benefits cannot be paid for months that pre-date the first month after the filing of the application.  Id.

Plaintiff asserts he may have been entitled to DIB had he been found to be disabled under his June 6, 2000 application for SSI and DIB. However, Plaintiff was found not to be disabled during the relevant time frame for this claim as of December 21, 2001.  When the Appeals Council denied Plaintiff's request to review ALJ Brown's decision, or to re-open the case, the December 21, 2001 decision became the Commissioner's final decision on the matter.  As the Court noted in section 11 above, neither the decision of the Appeals Council to decline review or re-opening of the case based on Plaintiff's newly submitted evidence, nor the decision of ALJ Wright to decline re-opening Plaintiff's earlier claim, is subject to judicial review.  Thus, under the doctrine of res judicata, since Plaintiff was found to be not disabled in the

Commissioner's final decision of December 21, 2001, he could not have been entitled to DIB as a result of his June 6, 2000 claim as his DIB insured status expired on December 31, 1999 (R. at 20).

### Plaintiff's Third Challenge: The Appeals Council Failed to Consider All Evidence in the Record

13.    Plaintiff's third, and facially illogical challenge to ALJ Brown's decision, is that the Appeals Council failed to consider all available evidence because the Appeals Council did not place the January 12, 2004 fully favorable decision of ALJ Wright, and the underlying administrative record pertaining to that decision, into the record that formed the basis for the December 21, 2001 unfavorable decision of ALJ Brown.  See Plaintiff's Brief, pp. 1, 7.  Plaintiff argues that these records form the basis of his request to re-open the earlier matter.  Id. The Court interprets this argument by Plaintiff as a claim that the Appeals Council should have consolidated the two records and considered the information contained in the records as a whole.

While an ALJ may consolidate hearings on two or more pending[6] matters before the Social Security Administration, thus creating a single record of the consolidated hearing, it is clear from ALJ Wright's January 12, 2004 wholly favorable decision that he did not do so.  See 20 C.F.R. § 404.952(a)(b); see also Plaintiff's Brief, Exhibit A (Decision of ALJ Wright). ALJ Wright explicitly stated that under the Commissioner's rules, Plaintiff's prior application could not be re-opened because it was outside the two year

---

[6] The Court recognizes the December 21, 2001 decision of ALJ Brown is now the final decision of the Commissioner and the matter is not pending, Plaintiff had a challenge to this decision, and obtained an adverse ruling from the Appeals Council.

and four year re-opening rules.  <u>See</u> Footnote 5, Section 11 above.  Further, ALJ Wright clearly stated in his decision that "new and material evidence does not exist to warrant re-opening of the claimant's prior applications."  <u>See</u> Plaintiff's Brief, Exhibit A (Decision of ALJ Wright).

As discussed in Section 11 above, the Court finds that neither the wholly favorable January 12, 2004 decision of ALJ Wright, nor the decision of the Appeals Council to decline to review or re-open Plaintiff's June 6, 2000 claim for SSI and DIB based on newly submitted evidence, is subject to judicial review.

14.     As noted in Section 10, Footnote 4 above, Plaintiff does not argue that the December 21, 2001 decision of ALJ Brown was not based on the substantial evidence of record at the time the decision was rendered.  His challenges are directed at the decision of ALJ Wright and the actions of the Appeals Council.  However, the Court has reviewed ALJ Brown's decision, and the medical and other evidence contained in the record, and finds no error in his unfavorable decision (R. at 20-24, 106-291).

ALJ Brown found Plaintiff suffered from severe musculoskeletal impairments, but these impairments, either considered alone or in combination, did not meet or equal in severity any disabling condition contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In his decision, the ALJ carefully reviewed the medical findings of Plaintiff's treating and consulting physicians as contained in the record, and considered Plaintiff's testimony and other evidence.

On December 19, 1984, Plaintiff's treating chiropractor, Dr. Ronald Freese, prepared a letter to a Mr. Michael Ward describing injuries for which he treated Plaintiff approximately 13 months earlier (R. at 131-135).  Dr. Freese noted Plaintiff reported being in an automobile accident on October 29, 1983 (R. at 131).  Dr. Freese diagnosed Plaintiff with a severe sprain-strain of the cervical spine with evidence of nerve root irritation, a moderate sprain-strain of the dorsal and lumbar spine, and traumatic chest compression (R. at 135).  Treatment consisted of chiropractic manipulations, and hot and cold packs (R. at 133).  The doctor disclosed that when he treated Plaintiff on November 8, 1984, Plaintiff reported minimal to moderate lower back pain when he did heavy lifting for long periods of time, and a minimal amount of thoracic pain radiating to his chest when his spine was out of alignment.  Id. Dr. Freese noted Plaintiff's prognosis was good.  Id.

On April 27, 1995, Plaintiff was treated by Dr. Steven Moore when he suffered amputation of the distal finger tips of three fingers of his non-dominant left hand in an industrial accident (R. at 154-157). Eleven days later, on May 8, 1995, Dr. Moore opined the corrective surgery after the amputations was successful, and Plaintiff would regain functional use of his left hand with good ability to grasp and pull within eight to 12 weeks (R. at 152).

Plaintiff began physical therapy for his left hand on May 15, 1995 (R. at 150-151).  He complained of pain in his upper left shoulder, elbow, arm, wrist and hand (R. at 151).  The physical therapist noted Plaintiff was

belligerent and hostile, and asked her "What if I jerk my hand away and slap you in the face?"  Id.  She assessed Plaintiff had the potential to make significant gains in the motion, strength and function of his left hand if he was motivated and "compliant" with the treatment program.  Id.  On June 6, 1995, Plaintiff was examined again by the physical therapist and she noted he was making good progress with the range of motion in the fingers of his left hand (R. at 149).

Plaintiff followed up with Dr. Moore on June 16, 1995 (R. at 148).  Dr. Moore noted Plaintiff still reported pain in his left hand, but the doctor opined that was to be expected.  Id.  The doctor released Plaintiff to return to work as long as he did not use his left hand.  Id.

On July 13, 1995, Plaintiff reported foot pain to treating podiatrist, Dr. John Custro (R. at 178).  The doctor noted Plaintiff had bilateral hammertoes, and thick calluses at the fifth metatarsal joint bilaterally.  Id.  Dr. Custro referred Plaintiff to Dr. Adhair Singh for surgical evaluation.  Id.

Plaintiff was again examined by Dr. Moore as a follow up to his left hand surgery (R. at 145).  The doctor noted Plaintiff's pain threshold was limiting his recovery, and recommended continued physical therapy to work on desensitization, strengthening, and range of motion exercises for his left fingers.  Id.  Dr. Moore anticipated Plaintiff would have some limitation in his left hand, but opined he would be able to grasp, lift or pull a maximum of 50 pounds.  Id.

On August 25, 1995, Plaintiff underwent foot surgery in which a v-osteotomy of the fifth metatarsal neck was performed bilaterally to remove enucleated keratotic lesions (R. at 138-141).  Plaintiff's surgeon, Dr. Adhair Singh, opined the surgery was successful and released Plaintiff on the same day with instructions to wear postoperative shoes (R. at 139).

Plaintiff followed up with Dr. Moore on November 2, 1995, six months after the amputations and surgery on his left fingers (R. at 144).  The doctor noted Plaintiff had fair range of motion in his finger joints.  Id.  Plaintiff complained of pain in his finger stumps, but Dr. Moore recommended waiting six months longer before deciding on further treatment.  Id.

On May 1, 1996, Plaintiff again followed up with Dr. Moore (R. at 142-143).  Plaintiff continued to complain of pain and dysfunction in his left hand (R. at 142).  Upon examination, the doctor noted Plaintiff's amputation stumps were well-healed and uninflamed.  Id.  Plaintiff reported that pressure on a small nodule over the dorsal ulnar stump caused pain.  Id.  Dr. Moore observed Plaintiff had good range of motion and grip strength in his left hand (R. at 143).  Plaintiff requested a consultation with a microvascular surgeon. Id.

On September 22, 1999, Plaintiff was treated for a cold, allergies and asthma by a nurse practitioner at Stanislaus Health Services Agency (R. at 173).

Plaintiff again visited Stanislaus Health Services agency on September 30, 1999 (R. at 172).  He advised his nurse practitioner that he

wanted to re-open his disability claim for the injury to his left hand, and requested a referral to a podiatrist for treatment of hammertoes.  Id.

On October 13, 1999, Plaintiff followed up with a nurse practitioner for asthma and for his hand (R. at 171).  He reported improved function in his hand, as well as improvement in his asthma.  Id.

Plaintiff was again treated for asthma and allergies on May 18, 2000 (R. at 169).  He was given prescription refills for Nasonex, Nasacort, albuterol, and cimetidine.  Id.

After relocating to Ticonderoga, New York, Plaintiff was examined by his new treating physician, Dr. Timothy Webb (R. at 211).  Dr. Webb noted Plaintiff had recently moved to New York from California, "where it sounds like he was embroiled in several legal issues related to his health."  Id.  Plaintiff reported chronic pain, heartburn, asthma, and allergies.  Id.  The doctor observed Plaintiff was very anxious with pressured speech and little eye contact.  Id.  Dr. Webb refilled Plaintiff's prescriptions for asthma medications and ibuprofen.  Id.

Dr. Webb conducted a disability interview with Plaintiff for the Essex County Department of Social Services on June 29, 2000 (R. at 212). Plaintiff reported pain in his left hand, cervical and thoracic spine pain, left hip pain, and foot pain because of his hammertoes.  Id.

On August 8, 2000, Plaintiff was examined by a podiatrist, Dr. Timothy Culliton (R. at 209).  Upon examination, Dr. Culliton observed Plaintiff's vascular status was intact bilaterally and symmetrically.  Id.  Pedal

pulses were strongly palpable.  Id.  Plaintiff had no edema or clubbing of the

digits.  Id.  Range of motion of the digits caused no pain, but palpation of the

fifth metatarsal joint caused pain bilaterally.  Id.  Dr. Culliton noted Plaintiff

had hammertoe deformities of the second, third, and fourth digits of the left

foot, but his right foot was within normal limits.  Id.  The doctor observed

Plaintiff had a mild bunion on the first metatarsal joint of his left foot, but this

condition was asymptomatic.  Id.  Dr. Culliton recorded that Plaintiff walked

without a limp, or any other signs of discomfort, although he claimed pain

upon physical examination.  Id.  Dr. Culliton recommended x-rays of Plaintiff's

feet and a conservative course of treatment including orthotics.  Id.  X-rays of

Plaintiff's feet revealed normal results (R. at 216-217).

On September 28, 2000, Plaintiff was evaluated by a psychologist,

Dr. Michael Merrens (R. at 229-230).  The doctor noted Plaintiff denied any

mental health problems, either past or present (R. at 229).  Dr. Merrens

assessed Plaintiff would need a low stress work environment that would allow

him to work at his own pace because of Plaintiff's lack of dexterity with his left

hand (R. at 230).

Plaintiff was consultatively examined by State agency physician,

Dr. Michael Holland, on September 26, 2000 (R. at 182-188).  Dr. Holland

observed, "[Plaintiff] is difficult to get a cogent history from.  He seems very

angry, speaks repeatedly about his legal troubles in California as well as

some family troubles.  He seems more concerned about the legal issues than

the medical issues" (R. at 182).  Plaintiff told Dr. Holland he had recently seen

23

Dr. Sellig, an orthopedic surgeon in Glens Falls, who told Plaintiff "there was not much wrong with him"[7] (R. at 183).  Dr. Holland noted Plaintiff told him he did not like Dr. Sellig's report at all.  Id.  Plaintiff reported a history of chronic neck and back pain, as well as pain in his right knee.  Upon examination, Dr. Holland noted intact motion of Plaintiff's lumbar and cervical spine (R. at 183).  The range of motion in Plaintiff's right knee was also normal.  Id.  Plaintiff told Dr. Holland he needed a cane because of pain in his right hip, but came into the office without the cane.  Id.  He returned to his car to retrieve the cane, but was observed using the cane with his right hand when he left the office.  Id.  Plaintiff told Dr. Holland he lived with his mother, did household chores and cleaning, mowed the lawn during the summer, did his own laundry and cooking, and could drive a car (R. at 184).  Plaintiff's orthopedic examination revealed normal results.  Id.  Dr. Holland interpreted the x-rays of Plaintiff's spine and right hip done by Dr. Sellig, and noted the x-ray of Plaintiff's lumbar spine showed grade I spondylolisthesis.  Id.  Right hip and cervical spine x-rays revealed normal results (R. at 185).  An x-ray of Plaintiff's right knee was also normal.  Id.  Dr. Holland concluded that with respect to Plaintiff's orthopedic examination, Plaintiff reported a history of chronic neck, back and right knee pain.  Id.  However, physical examination revealed an intact range of motion in Plaintiff's cervical and lumbar spine, and in his right knee.  Id.

Dr. Holland also completed an internal medicine examination of Plaintiff on September 26, 2000 (R. at 186-188).  This examination revealed entirely unremarkable results (R. at 187-188).  Plaintiff's pulmonary function

---

[7] The report of Plaintiff's examination by Dr. Sellig is not contained in the record.

tests were normal (R. at 189-193).  Dr. Holland's most significant finding was that Plaintiff had a history of mild asthma that was well-controlled (R. at 188).

On September 28, 2000, Plaintiff was again examined by Matthew Merrens, Ph.D (R. at 228).  Dr. Merrens reported Plaintiff "brought a huge amount of legal information to the interview and attempted to present a legal argument to represent his situation."  Id.  The psychologist noted "I suspect that [Plaintiff] is massively interested in defending his various legal battles and wants to be seen as disabled.  He reports that due to the trauma of the industrial accident that he now needs a very low stress work environment." Id.  Dr. Merrens recommended Plaintiff be referred for vocational counseling and work placement.  Id.

On November 19, 2000, a non-examining State agency physician, Dr. Richard Blaber, completed a Physical Residual Functional Capacity Assessment of Plaintiff's ability to perform work-related activities (R. at 195-202).  Dr. Blaber assessed Plaintiff as capable of performing the requirements of medium work, with minor limitations because of the missing finger tips on his left hand and asthma (R. at 196-201).  Dr. Blaber noted that based on the reports of Plaintiff's examining physicians, there was no evidence of extreme pain in his feet and joints (R. at 200).

On December 7, 2000, Matthew Merrens, Ph.D. performed a psychological evaluation of Plaintiff using the Millon inventory to explore personality dynamics and clinical symptoms (R. at 226-227, 242-243).  Dr. Merrens assessed Plaintiff as being anxious to conform to the expectations of

others, fearful of expressing emotion, and defensive (R. at 226, 242).  He

noted the inventory revealed no distinct Axis I syndromes, and no Axis II

personality disorders.  Id.  Dr. Merrens opined Plaintiff had low emotional

stamina and endurance because of "his belief that he is physically disabled

and cannot perform sustain normal work activities" (R. at 227, 243).  The

psychologist noted Plaintiff's Millon inventory showed features of obsessive-

compulsive disorder and paranoid personality disorder in mild to moderate

form.  Id.

Plaintiff underwent a medical examination for employability

assessment and alcohol and drug addiction assessment on January 18, 2001

(R. at 205-206).  This assessment was performed by a Registered

Physician's Assistant (RPA) at Ticonderoga Health Center (R. at 206).  The

RPA assessed Plaintiff as moderately limited in walking, lifting and carrying,

and pushing and pulling (R. at 205).  No objective medical tests or x-rays

were included with the report (R. at 205-206).

Matthew Merrens, Ph.D. completed a Medical Examination for

Employability Assessment, Disability Screening, and Alcohol/Drug Addiction

Determination on January 19, 2001 (R. at 224-225).  Dr. Merrens assessed

Plaintiff as being moderately limited in carrying out instructions, maintaining

attention and concentration, interacting appropriately with others, and being

able to function at a consistent pace (R. at 224).  Dr. Merrens listed no other

significant findings, but reiterated Plaintiff needed a low stress job that was

not inconsistent with his physical limitations. (R. at 224-225).  Dr. Merrens

noted Plaintiff's physical limitations should be evaluated by a medical examiner (R. at 225).

On December 6, 2001, Plaintiff was examined by Dr. Glen Chapman of Hudson Headwaters Health Network when Plaintiff requested that Dr. Chapman complete a disability form (R. at 253).  Dr. Chapman recorded Plaintiff's complaints regarding his medical history, pain, and symptomatology, but noted no objective medical findings.  Id.  Dr. Chapman examined Plaintiff again on December 19, 2001, but his findings were primarily related to Plaintiff's self-reported symptoms, rather than to objective medical findings from examinations, x-rays, or other tests.  Id.  This examination by Dr. Chapman was the last medical examination available to ALJ Wright before he prepared his December 21, 2001 finding that Plaintiff was not disabled during the time frame relevant to his June 6, 2000 application for SSI and DIB.

Plaintiff was examined by Dr. Chapman again on January 15, 2002, when the doctor conducted a Medical Examination for Employability Assessment (R. at 246-247).  Dr. Chapman assessed Plaintiff as being very limited in his abilities to lift and carry, push and pull, and climb stairs (R. at 246).  Also, he assessed Plaintiff as being very limited in maintaining attention and concentration, exhibiting appropriate behavior in the workplace, and maintaining work activity at a consistent pace.  Id.  However, Dr. Chapman's report appears to have been based on Plaintiff's self-report, as no objective

test results or physical examination findings are attached to his assessment (R. at 246-247).

On January 28, 2001, Dr. Chapman completed a mental health evaluation for Plaintiff (R. at 248).  Dr. Chapman noted Plaintiff had bad dreams about his past injuries.  Id.  Plaintiff complained of financial difficulties, difficulty obtaining legal representation, depression, difficulty concentrating, and poor self-esteem.  Id.  The doctor observed Plaintiff was "worked up," and showed anger and tears.  Id.  Dr. Chapman added Wellbutrin to Plaintiff's treatment regimen.  Id.

Approximately eleven months later, Dr. Chapman completed another Medical Evaluation for Employability Assessment on November 30, 2001 (R. at 249-250).  No interim treatment records were provided; however, Dr. Chapman assessed Plaintiff as being very limited in his ability to lift and carry, push and pull, climb stairs, interact appropriately with others in the workplace, avoid extremes in behavior in the workplace, and function at a consistent pace (R. at 249).  This is the final medical record contained within Plaintiff's record for his June 6, 2000 claim.

In his decision, ALJ Brown considered and weighed the opinions of the medical professionals that were available to him at the time of the decision (R. at 20-24).  He reviewed the tests and other objective medical findings in Plaintiff's record.  Id.  ALJ Brown assessed Plaintiff's credibility, and based on the totality of evidence available to him at the time of his

decision determined Plaintiff retained the residual functional capacity to perform a wide range of work at the medium level.  Id.

Further, the Appeals Council reviewed Plaintiff's new evidence at his request, and did not find that evidence to be material to the December 21, 2001 decision of ALJ Brown (R. at 3-6).  Thus, the Appeals Council properly denied Plaintiff's request for review of the ALJ's decision on April 25, 2002. While the Appeals Council notified Plaintiff it would allow him to send additional evidence pertaining to his June 6, 2000 claim on June 20, 2003, upon evaluation of this evidence the Appeals Council declined to review the December 21, 2001 decision of the ALJ, or to re-open the claim.

## Conclusion

15.     After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, and consultative examiners, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error, and further finds that substantial evidence supports the ALJ's decision. Accordingly, the Court grants Defendant's Motion for Judgment on the Pleadings and denies Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is denied.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

Victor E. Bianchini
United States Magistrate Judge


SO ORDERED.

Dated:  August 28, 2008
        Syracuse, New York